## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Joe Hand Promotions, Inc.,

      Plaintiff,                                 Civ. No. 11-559 (RHK/FLN)
                                             **MEMORANDUM OPINION**
                                             **AND ORDER**
v.

Kelley S. Sharp, *et al.*,

      Defendants.

---

Scott A. Wilson, Minneapolis, Minnesota, for Plaintiff.

James P. Conway, Dennis P. Moriarty, Jaspers, Moriarty & Walburg, P.A., Shakopee, Minnesota, for Defendant Kelley S. Sharp.

---

      This matter is before the Court on the Objections (Doc. No. 34) of Plaintiff Joe Hand Promotions, Inc. ("Joe Hand") to Magistrate Judge Noel's July 3, 2012 Report and Recommendation ("R&R"). In the R&R (Doc. No. 30), Judge Noel recommended that Defendant Kelley Sharp's Motion for Judgment on the Pleadings, or in the alternative, Motion for Summary Judgment (Doc. No. 18) be granted. For the reasons that follow, Joe Hand's Objections will be overruled.

      This is a cable piracy case. Joe Hand was the owner of the exclusive distribution rights to a pay-per-view program entitled "Ultimate Fighting Championship 96: Jackson v. Jardine" (the "Program"), broadcast on March 7, 2009. It alleges that on that date, without authorization, the Program was intercepted and displayed on television screens at Kelley's Bar in Shakopee, Minnesota. It commenced this action in March 2011, asserting

claims against Sharp Properties, Inc. ("Sharp Properties"), which owned the bar, and Sharp, who owned Sharp Properties, for violating two provisions of the Federal Communications Act of 1934 ("FCA"), as amended (Counts I and II),[1] and conversion under Minnesota law (Count III).

On May 7, 2012, Sharp moved for judgment on the pleadings, or in the alternative, for summary judgment. (Doc. No. 18.) He argued that he could not be individually liable under the FCA absent evidence sufficient to pierce the corporate veil, which he claimed was lacking. And if the FCA claims against him were dismissed, he argued that the Court should decline to exercise supplemental jurisdiction over the conversion claim. In response, Joe Hand asserted that veil piercing was not the correct standard for imposing individual liability on Sharp. Rather, it argued that it need only "establish that [Sharp] had the right and ability to supervise the violations and a strong financial interest in the

---

[1] Count I asserts a violation of 47 U.S.C. § 605, while Count II asserts a violation of 47 U.S.C. § 553. Section 605 provides, in pertinent part, that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, [or] substance . . . of such intercepted communication to any person. No person not being entitled thereto shall receive . . . any interstate or foreign communication by radio and use such communication . . . for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a). Similarly, Section 553 provides, in pertinent part, that "[n]o person shall intercept or receive . . . any communications service offered over a cable system, unless specifically authorized to do so." 47 U.S.C. § 553(a)(1). The distinction between the conduct prohibited by these statutes is minor; the former "is directed solely at radio transmissions," while the latter "applies to theft of all signals being transmitted over a cable system." TKR Cable Co. v. Cable City Corp., 267 F.3d 196, 206-07 (3d Cir. 2001) ("Once a satellite transmission reaches a cable system's wire distribution phase, it is subject to § 553 and is no longer within the purview of § 605."). In the piracy context, therefore, the statutes are analogous and claims thereunder generally are treated similarly. See, e.g., Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 133 (2d Cir. 1996) (noting significant "interplay and overlap between §§ 553 and 605" in context of television-signal interception); Integrated Sports Media, Inc. v. Canseco, No. CV 10-7392, 2012 WL 631851, at *4 (C.D. Cal. Feb. 27, 2012) ("Sections 553 and 605 are similar in that they both prohibit the unauthorized display of television programming.").

activity." (Doc. No. 24 at 18.) "Based on [Sharp's] position as the sole shareholder of Sharp Properties," it argued there could be "no question" he had the "right and ability to supervise the violations and a strong financial interest in the activity," rendering individual liability appropriate. (Id. at 19.)

At the parties' request (see Doc. No. 19 at 2), the Court referred the Motion to Magistrate Judge Noel, who held a hearing on June 22, 2012. On July 3, 2012, Judge Noel recommended that the Motion be granted. He accepted Sharp's argument that Joe Hand "must pierce the corporate veil in order to hold [Sharp] personally liable for [Sharp Properties'] alleged violation of" the FCA. (R&R at 3.) He further noted that Joe Hand had "conceded at the hearing that it could not survive [the] Motion . . . if the Court were to conclude that the traditional, piercing-the-corporate-veil analysis applies," and in any event Joe Hand had not "produced sufficient evidence to pierce the corporate veil." (Id.) Accordingly, he recommended that the FCA claims against Sharp be dismissed. And with those claims out of the case, he further recommended that the Court decline to exercise supplemental jurisdiction over the conversion claim against Sharp. (Id. at 4.)[2]

Joe Hand now objects, arguing that the Magistrate Judge applied an incorrect standard for individual liability under the FCA – veil piercing – rather than the "benefit and

---

[2] The Magistrate Judge elected to consider Sharp's Motion as one for summary judgment. Where (as here) extra-pleading material is submitted in connection with a motion for judgment on the pleadings and that material is not excluded by the Court, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The Court enjoys "complete discretion" whether to exclude the material and proceed under Rule 12 or, rather, consider it and proceed under Rule 56. Stahl v. U.S. Dep't of Agric., 327 F.3d 697, 701 (8th Cir. 2003). No party has objected to Judge Noel treating the Motion as one for summary judgment, which was proffered as an alternative basis for the requested relief. The Court, therefore, follows the parties' (and Judge Noel's) lead and treats the Motion as one for summary judgment.

control" test, *i.e.*, whether the individual "had the right and ability to supervise the violations and a strong financial interest in the activity." (Doc. No. 34 at 1.) It contends that the latter standard is "firmly established national[ly]" and presents the correct approach to individual liability in cable piracy cases. (Id. at 4.)

The Court reviews the Magistrate Judge's R&R *de novo*. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b). It may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Court need not accept new evidence and may "make a determination of the basis of th[e] record" developed before Judge Noel. D. Minn. LR 72.2(b).

Joe Hand frames the issue as whether the correct standard for individual liability under the FCA is "piercing the corporate veil" or "benefit and control." It argues for the latter, based on the relationship between the FCA and the Copyright Act, 17 U.S.C. § 101 *et seq*. According to Joe Hand, the FCA is intended to protect rights analogous to those under the Copyright Act. And because the benefit-and-control test is the "well-established standard for establishing [individual] liability in cases involving [copyright] violations," it argues that the Court should apply that test to its FCA claims against Sharp. (Doc. No. 34 at 5 (quoting Joe Hand Promotions, Inc. v. Hart, No. 11-80971-CV, 2012 WL 1289731, at *3 (S.D. Fla. Apr. 16, 2012)).)

To be sure, some courts (such as Hart) have accepted this argument and applied the benefit-and-control test when assessing individual liability for corporate misconduct under the FCA. Others have questioned whether that test is properly applied in FCA cases,

without answering the question.   See, e.g., J&J Sports Prods., Inc. v. Resendiz, No. 08 C 4121, 2009 WL 1953154, at *2 n.1 (N.D. Ill. July 2, 2009) ("[W]e are skeptical that the doctrine . . . should be extended to broadcast piracy actions."); J&J Sports Prods, Inc. v. Torres, No. 6:09-cv-391, 2009 WL 1774268, at *4 (M.D. Fla. June 22, 2009) ("[T]he Court is not convinced that the test for [individual] liability under the Copyright Act should be extended to the [FCA]."); see also J&J Sports Prods., Inc. v. Mayreal II, LLC, __ F. Supp. 2d __, 2012 WL 346649, at *3 n.5 (D. Md. Feb. 1, 2002).   Indeed, as noted in Torres, "[t]here is no indication . . . that the two Acts share a common legislative history or that the policy behind the [Copyright Act's individual] liability rule should apply to" cases under the FCA.   2009 WL 1774268, at *4.

Ultimately, however, the Court need not decide which of these two standards to apply, because the Eighth Circuit has articulated its own.   In Comcast of Illinois X v. Multi-Vision Electronics, Inc., 491 F.3d 938 (8th Cir. 2007), the defendant corporation (Multivision) and its sole officer and shareholder (Abboud) were alleged to have violated the FCA – specifically, 47 U.S.C. § 553 – by distributing cable descramblers used to steal the plaintiff's cable signal.   The district court granted summary judgment for the plaintiff and assessed more than $2 million in damages against Multivision and Abboud, jointly and severally.   On appeal, Abboud challenged the imposition of individual liability under the FCA.   The Eighth Circuit affirmed, stating:

> Abboud was Multivision's only corporate officer and its sole owner[].   His deposition testimony demonstrates that he knew of the uses and features of the cable boxes Multivision sold, was intimately familiar with how cable services function, and was involved in setting company policy.   *Because the record shows no distinction between Abboud's actions and Multivision's, the*

> *district court did not err in making Abboud personally liable for the judgment.*

Id. at 947-48 (emphasis added).

The Eighth Circuit, therefore, applied an individual-liability standard different from both "veil piercing" and "benefit and control." A plaintiff need not show a "failure to observe corporate formalities" or "insufficient capitalization," traditional elements of a veil-piercing analysis. Damon v. Groteboer, Civ. No. 10-92, 2011 WL 886132, at *5-6 (D. Minn. Mar. 14, 2011) (Tunheim, J.). Nor must a plaintiff necessarily establish that an individual defendant had a "strong financial interest" in the allegedly unlawful conduct, as in the benefit-and-control test. Rather, to impose individual liability under the FCA, a plaintiff must show that there exists "no distinction" between the individual's actions and that of his corporation. Comcast, 491 F.3d at 947.

Joe Hand has not satisfied this standard here. At most, it has demonstrated that Sharp was the sole proprietor and shareholder of Sharp Properties. But it has not created – indeed, it has not even attempted to show, either before Judge Noel or in connection with the instant Objections – a genuine issue that "no distinction" exists between Sharp's actions and that of his corporation. In Comcast, evidence in the record showed far more regarding the individual's involvement in the unlawful conduct. 491 F.3d at 947 (noting from deposition testimony that individual defendant "knew of the uses and features of the cable boxes [that the company] sold" and "was involved in setting company policy"). Here, by contrast, Joe Hand asks the Court to find Sharp personally liable based simply on the fact that he is the sole shareholder of Sharp Properties. Comcast requires more.

Notably, the Court would reach the same result even if it were to apply the "benefit and control" test advocated by Joe Hand.   Joe Hand apparently believes all it must do to satisfy this test is point out that an individual solely owns a corporate wrongdoer.   (See Doc. No. 24 at 19 ("Based on [Sharp's] position as the sole shareholder of Sharp Properties, Inc., the owner of Kelley's Bar, there can be no question that not only did he have the right and ability to supervise the violations and a strong financial interest in the activity, he was the *only* person with such rights and interests.   In this regard, [Sharp] may be held individually liable.") (emphasis in original).)   But *every* owner of a closely held corporation can direct the corporation's activities and will derive a financial benefit from the corporation's conduct.   Accepting Joe Hand's logic would, therefore, automatically blur the distinction between closely held corporations and their individual owners in cases under the FCA.   The Court perceives no reason to endorse such a result.

As noted last month in J&J Sports Productions, Inc. v. Santillan, No. 1:11CV1141, 2012 WL 2861378, at *2 (M.D.N.C. July 11, 2012), "an individual defendant who has the right and ability to supervise the violations and a strong financial interest in the activity may be liable under" the FCA, but "in order to show individual liability, *allegations of ownership of the establishment, without more, are insufficient*." (emphasis added) (internal quotation marks and alterations deleted).   Accord, e.g., J&J Sports Prods., Inc. v. Dougherty, Civ. A. No. 12-1255, 2012 WL 2094077, at *2 (E.D. Pa. June 11, 2012); J&J Sports Prods., Inc. v. 291 Bar & Lounge, LLC, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009); J&J Sports Prods., Inc. v. Daley, No. CV 06-0238, 2007 WL 7135707, at *3-4 (E.D.N.Y. Feb. 15, 2007).   Put another way,

> to satisfy the "right and ability to supervise" prong, a plaintiff must allege more than the shareholder's mere right and ability to supervise the corporation's conduct generally. The plaintiff must allege that the defendant had supervisory power over the infringing conduct itself. Furthermore, to satisfy the "direct financial interest prong," a plaintiff cannot merely allege that the shareholders profit in some way from the profits of the corporation. Simply put, an individual's status as a shareholder or officer is insufficient to show that he or she had the requisite supervision authority or financial interest to warrant individual liability.

J&J Sports Prods., Inc. v. Walia, No. 10-5136 SC, 2011 WL 902245, at *3 (N.D. Cal. Mar. 14, 2011). This Court agrees. And here, Joe Hand has proffered nothing beyond proof of Sharp's ownership of Sharp Properties. This simply will not suffice. Accordingly, the Court agrees with the Magistrate Judge that Sharp's Motion must be granted, and Joe Hand's Objections will be overruled.

One final point bears mentioning. Sharp contends that with the federal claims against him dismissed, the Court should decline to exercise supplemental jurisdiction over the conversion claim. (See Doc. No. 19 at 22.) And he is correct that "[o]rdinarily, when the federal claims are disposed of before trial, courts decline to exercise supplemental jurisdiction over the state-law claims." (Id.) The problem, however, is that federal claims remain in this case – namely, those against *Sharp Properties* – even with the dismissal of the federal claims against Sharp *individually*. Accordingly, the "default" rule of declining supplemental jurisdiction is inapplicable, and the Court will not dismiss the conversion claim against Sharp. See, e.g., Flowers v. Secrets Night Club, No. 09 C 1736, 2010 WL 4625396, at *3 (N.D. Ill. Nov. 2, 2010) (retaining supplemental jurisdiction over state-law claims against individual defendant where federal claims remained against corporate defendant); Wiggins v. Philip Morris, Inc., 853 F. Supp. 458, 469-70 (D.D.C.

1994) (same).

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Joe Hand's Objections (Doc. No. 34) are **OVERRULED**, Sharp's Motion for Judgment on the Pleadings, or in the Alternative, Motion for Summary Judgment (Doc. No. 18) is **GRANTED**, and Joe Hand's federal claims against Sharp (Counts I and II) are **DISMISSED WITH PREJUDICE**.


Dated: August 14, 2012            s/Richard H. Kyle
                                  RICHARD H. KYLE
                                  United States District Judge